Opinion by Greene, J. The fundamental inquiry before us in this case is the proper application of the standard of appellate review to a trial court’s order to transfer a case pursuant to Maryland Rule 2-327(c). Although the underlying facts of this case involve alleged medical malpractice, it is before us because of the Circuit Court for Baltimore City’s grant of the Defendants’ motion to transfer the case to Talbot County. The Court of Special Appeals reversed the hearing judge’s grant of the motion to transfer, holding that the moving party failed to meet its burden of demonstrating that the convenience of the parties and the interests of justice supported transfer of the case from Baltimore City to Talbot County. Because we determine that the Circuit Court did not abuse its discretion when it concluded that the case should be transferred to Talbot County, we shall reverse the judgment of the Court of Special Appeals. I. As a result of the procedural posture of this case, the facts are queued up by the parties’ pleadings. With the exception of limited factual findings by the Circuit Court related to the residency of the parties, the parties have not litigated the remaining allegations. We provide a summary of the allegations here for context only. Brandon Kerrigan and his parents, Kimberly and Michael Kerrigan, (“Respondents”), live in Boz-man, a community located in Talbot County. Brandon, through his parents and with them in their individual capacities, fíled a medical malpractice action in May 2015 against seven defendants: three medical systems, the University of Maryland Medical System Corporation, the University of Maryland Shore Regional Health, Inc. (“Shore Medical”), and Delmarva Radiology, PA, and four doctors in their individual capacities, Drs. David White, Dayanand Bagdure, Nicole Mallory, and Steven Sauter (“Petitioners”), in the Circuit Court for Baltimore City. In August of 2013, Brandon, age fifteen, visited his Talbot County physician, Dr. Mark Langfitt, after experiencing shortness of breath and a prolonged period of dry coughing. Dr. Langfitt referred Brandon to Delmarva Radiology to receive a chest X-ray for further examination. Dr. Steven Sauter reviewed the X-ray results at Delmarva Radiology and diagnosed Brandon with atypical pneumonia. Thereafter, Dr, Langfitt prescribed Brandon five days of antibiotics. Brandon’s symptoms persisted. He was admitted to the emergency room at Shore Medical, where an examination revealed indicators of potential heart failure. Dr. David White directed that Brandon receive intravenous fluids while Brandon waited to receive further testing to confirm the condition of his heart. Dr. White consulted with Dr. Dayanard Bagdure, of the University of Maryland Medical System Corporation, who agreed to treat Brandon after an emergency transfer, by helicopter, to the University of Maryland in Baltimore City. Brandon received fluids until he completed them during the helicopter ride, where he coded on his way from Talbot County to Baltimore City. Upon admission to the University of Maryland, Brandon’s treating physicians changed his diagnosis from heart failure to septic shock. After arrival, Brandon received a second blood test, the results of which confirmed heart failure. At the University of Maryland, Brandon had received over four liters of IV fluids during a fourteen hour period before he received any diuretics. Four months after his admission, Brandon received a heart transplant. After the Kerrigans filed suit in May 2015, the seven Petitioners jointly filed a motion to transfer venue from Baltimore City to Talbot County, pursuant to Rule 2-327(c), and requested a hearing. After a lengthy hearing, the Circuit Court granted the motion to transfer and delivered an eight-minute oral decision from the bench. The hearing judge clarified that he had considered the motion on forum non conve-niens grounds: And, obviously, this is not a claim that the forum is improper. It’s not a motion to dismiss for an improper forum. It’s a motion under the forum non conveniens analysis as to whether the case as it is and whether the factors balance heavily in favor of transfer to the suggested jurisdiction of Talbot County. I have weighed those factors, and I do find that those factors do weigh strongly in favor of transfer. There are a number of things that I considered. The hearing judge explained that his first consideration in the balancing test was convenience to the parties and witnesses: First, with respect to the balance of convenience of the parties and the witnesses, as counsel for the defendant has pointed out, seven of the ten named parties in the case, plaintiff and defendants, are in Talbot County. I was struck by the fact and it was pointed out by defense counsel that plaintiffs actually must pass the Circuit Court for Talbot County on the way to the Circuit Court for Baltimore City. I was unpersuaded by the exhibit and statistics presented by plaintiffs’ counsel as to the witnesses. I don’t find the fact that the transplant team is in Baltimore City is of significance. The primary and key witnesses that would be testifying in this case—obviously, everyone has noted that it’s hard to say who will actually testify. But you’re not going to have 500 and some care providers who may have touched the treatment at some point testify at trial. But it’s clear that the significant balance is in favor of those who would be inconvenienced significantly coming from Talbot County to Baltimore City. Next, the hearing judge explained that consideration of public interest, including the burden on the public, weighed in favor of transfer to Talbot County: As to the statistical analysis with respect to the other prong, the public interest, I was not persuaded by the statistics as argued by plaintiffs’ counsel. The numbers don’t bear out in what I reviewed in the annual statistical abstract as to the courts’ dockets. Of course, I certainly am not saying that we’re here in Baltimore City ... looking to avoid having additional cases. We certainly can handle everything that comes at us, and we do. But the numbers do not support plaintiffs’ position. The numbers, in fact, would weigh in favor—strongly in favor of the transfer. With respect to the burden on the public, again, both with respect to the jury duty issue, clearly there’s a heavier burden here in the city than in Talbot County, based on just the numbers submitted and the number of trials that are recorded as having taken place.... [T]he other component of the public interest that I was considering was the question with respect to the parties’ interest or the public’s interest in the health care that’s provided in the jurisdiction. I was persuaded by the defense argument noting that the sole institution in Talbot County providing medical care is a party defendant in the case. So compare that to Baltimore City where there are several large medical institutions. The Court does find that there is a significantly stronger interest in Talbot County in the handling of this matter, the outcome of this matter than in Baltimore City. The hearing judge noted that he considered other factors as well. Ultimately, upon weighing the various considerations and allocating appropriate deference to the plaintiffs for their choice of venue, the hearing judge found that transfer to Talbot County was appropriate. He said: Other factors that were mentioned in terms of location of documents, evidence, service of process, I don’t find that those factors weigh in favor of either the plaintiff or— plaintiffs or defendants. But at bottom, the Court sees many motions to transfer, noting that plaintiff is afforded deference with respect to choice of venue. And in many cases, it comes down to, well, it would certainly be more convenient for it to be in, for example, Cecil County than in Baltimore City, but not strong—in terms of the factors, the factors would not weigh strongly in many cases. But in this case, I see this as, far and away, one of the strongest in terms of weighing in favor of transfer to Talbot County. That the inconvenience of the parties and the witnesses would be tremendous if the matter were handled in Baltimore City. And that it serves the interest of justice to transfer the matter to Talbot County. So the motion to transfer is granted.... It doesn’t change my decision [that there will be, at a minimum, six physicians that will be called to trial from the University of Maryland and that there are two doctors down there and there are two doctors up here], I find that the balance weighs strongly in favor .., even given those arguments, in favor of transfer. (Emphasis added). II. The Kerrigans noted an appeal to the Court of Special Appeals from the Circuit Court’s order to transfer the case to Talbot County. The Court of Special Appeals reversed the Circuit Court in an unreported opinion, holding that, like in Scott v. Hawit, 211 Md.App. 620, 66 A.3d 60, cert. denied, 434 Md. 314, 75 A.3d 319 (2013), the balance of the factors did not weigh strongly in favor of transfer but rather weighed in “near equipoise.” The University of Maryland Medical System Corporation, et al., filed a petition for certiorari, which we granted. Univ. of Md. Med. Sys. Corp. v. Kerrigan, 452 Md. 5, 155 A.3d 891 (2017). The certiorari petition contained three questions.[1] We find the Court of Special Appeals' action in reframing the questions and condensing them into a single question for clarity more apropos. Accordingly, we adopt the following question to be resolved: Did the Circuit Court abuse its discretion by granting the motion to transfer venue? We answer no. III. When faced with the task of reviewing transfers granted pursuant to Rule 2-327(c), this Court has resolutely applied an abuse of discretion standard. Odenton Dev. Co. v. Lamy, 320 Md. 33, 40, 575 A.2d 1235, 1238 (1990). Although appellate courts do not rubberstamp the rulings of trial court judges, appellate courts “should ... be reticent” to substitute their own judgment for that of the trial court unless they can identify “clear abuse” of the wide latitude given to trial courts when ruling on Rule 2-327(c) motions. Urquhart v. Simmons, 339 Md. 1, 17-19, 660 A.2d 412, 420-21 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981)); see Lapides v. Lapides, 50 Md.App. 248, 252, 437 A.2d 251, 254 (1981) (“The exercise of a judge’s discretion is presumed to be correct, he [or she] is presumed to know the law, and is presumed to have performed his [or her] duties properly.”) (internal citations omitted); Alexis v. State, 437 Md. 457, 478, 87 A.3d 1243, 1254 (2014) (citing North v. North, 102 Md.App. 1, 13-14, 648 A.2d 1025, 1031-32 (1994)); Aventis Pasteur, Inc. v. Skevofilax, 396 Md. 405, 436, 914 A.2d 113, 132 (2007) (“So long as the Circuit Court applies the proper legal standards and reaches a reasonable conclusion based on the facts before it, an appellate court should not reverse a decision vested in the trial court’s discretion merely because the appellate court reaches a different conclusion.”); see also Kern v. TXO Production Corp., 738 F.2d 968, 971 (8th Cir. 1984) (“The very concept of a discretion presupposes a zone of choice within which the trial court may go either way.”).[2] IV. Parties’ Contentions Respondents argue that the Circuit Court abused its discretion when transferring the case from Baltimore City to Talbot County. The Kerrigans note that the burden of persuasion resided with the Petitioners in the trial court and that, based on the record of this case, the Circuit Court could not reasonably find that the balance strongly weighed in favor of transferring the case from Baltimore City to Talbot County. The Kerrigans point to several alleged tortious acts that occurred in Baltimore City as well as the three defendants and multiple treating physician-witnesses who would be inconvenienced by traveling from Baltimore City, where they work, to Talbot County. The Kerrigans further argue that the Circuit Court erred when it assessed the interests of justice by finding that Baltimore City’s caseload was larger than Talbot County’s, that Talbot County had a greater interest in the health care provided by Shore Medical than Baltimore City had in the care provided by the University of Maryland, and that the jury burden would be greater in Baltimore City than in Talbot County. According to the Kerrigans, the failure to properly weigh the arguments made by both sides warranted reversal by the Court of Special Appeals. Petitioners, on the other hand, urge this Court to reverse the Court of Special Appeals, and point us to Odenton and Urquhart as holding that a trial court has discretion to make the determination to transfer the case. Petitioners suggest that in the present case, the hearing judge properly weighed the facts before him and that he, therefore, did not abuse his discretion in granting the motion to transfer. Petitioners invite us to clarify what they suggest was an incorrect reliance upon Scott v. Hawit, 211 Md.App. 620, 66 A.3d 60 (2013), a case which they argue is factually different from the present case. History of Rule 2-327(c) Rule 2-327(c), provides: On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice. The Maryland Rules Committee drafted Rule 2-327(c) in 1984 for our adoption, and, in doing so, relied on the language found in 28 U.S.C. § 1404(a). Odenton, 320 Md. at 40, 575 A.2d at 1238. Section 1404(a) of Title 28 of the United States Code states that “[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.”[3] In light of the near-replication of the federal language, we held in Odenton that “federal law construing § 1404(a) is highly persuasive in our analysis.” 320 Md. at 40, 575 A.2d at 1238; Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) (“This section is derived from 28 U.S.C. § 1404(a) and is intended to incorporate the body of law construing that statute.”); see Stidham v. Morris, 161 Md.App. 562, 568, 870 A.2d 1285, 1289 (2005) (“In fact, federal and Maryland law, on this point, can almost be viewed as one body of law.”). The federal statute, 28 U.S.C. § 1404(a), has its origins in the federal common law doctrine of forum non conveniens. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419, 434 (1981). In Piper Aircraft, the United States Supreme Court acknowledged the intent of Congress to create a legislative analogue to the common law doctrine. Congress did not simply enshrine pre-existing common law into statutory form but rather revised the doctrine to “giv[e] more discretion to transfer under § 1404(a) than [courts] had to dismiss on grounds of forum non conveniens.” Id. at 253, 102 S.Ct. at 265, 70 L.Ed.2d at 434; M. Moore, Federal Practice § 111.53 (Matthew Bender & Company, Inc., 2017) (“Recognizing that the ‘broad venue provisions in federal [a]cts often resulted in inconvenient forums,’ Congress intended Section 1404(a) to remedy this situation by authorizing easy transfer of actions to a more convenient federal forum.”) (internal citations omitted). Congress sought to avoid the unnecessary and unjust consequences that could arise as a result of the application of the forum non conveniens doctrine by making transfers easier than dismissal on the same grounds. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789, 793 (1955) (“Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum, non conveniens, dismissal of the action, was eliminated by the provision in § 1404 (a) for transfer.... [I]t can hardly be called mere codification”). Greater discretion given to trial courts by Congress went hand-in-hand with “intending] to permit courts to grant transfers upon a lesser showing of inconvenience.” Id. (“That is not to say that the relevant factors have changed or that the plaintiffs choice of forum is not to be considered, but only that the discretion to be exercised is broader.”). Congress’s construction of 28 U.S.C. § 1404(a) relegated the common law doctrine to a limited set of circumstances involving a foreign forum. American Dredging Co. v. Miller, 510 U.S. 443, 449, 114 S.Ct. 981, 986, 127 L.Ed.2d 285, 294 n.2 (1994). In Johnson v. G.D. Searle & Co., we first recognized the distinction between the federal common law and the federal statutory provision. 314 Md. 521, 526-27, 552 A.2d 29, 31-32 (1989). Application of Maryland Rule 2-327 to this Case It is undisputed in this case that the Kerrigans could have brought suit in either Talbot County or Baltimore City.[4] “Rule 2-327(c) does not deal with a transfer for want of venue; it confers on a circuit court the discretionary power to transfer even if the transferring court is a proper venue.” Leung, 354 Md. at 222, 729 A.2d at 959. The plaintiff chooses where to bring suit within the parameters set out by the Courts and Judicial Proceedings Article,[5] and the trial court must regard that choice with deference. Id. at 224, 729 A.2d at 959 (citing Urquhart v. Simmons, 339 Md. 1, 18, 660 A.2d 412, 420 n.7 (1995)). That deference shrinks, however, when the plaintiff does not reside in the forum where the plaintiff has chosen to file suit. Leung, 354 Md. at 228-29, 729 A.2d at 962. That deference diminishes further “if a plaintiffs choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.”[6] Stidham, 161 Md. App. at 569, 870 A.2d at 1289-90 (citing Liban v. Churchey Group II, L.L.C., 305 F.Supp.2d 136, 142 (D.D.C. 2004)). A trial court, however, has wide discretion to weigh the “convenience of the parties and witnesses” and “interests of justice” on the facts of the case before it when assessing whether to transfer the case. Odenton, 320 Md. at 40, 575 A.2d at 1238 (citing Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct 2239, 2244, 101 L.Ed.2d 22, 31 (1988)); Leung, 354 Md. at 224, 729 A.2d at 959. Only if the trial court fails to exercise, or abuses, its discretion will a reviewing court reverse the trial court’s order to transfer venue. Urquhart, 339 Md. at 19, 660 A.2d at 421. A. The trial court must give due deference to the plaintiff’s CHOICE OF VENUE. In relying on 28 U.S.C. § 1404(a) as a model for Rule 2-327(c), we adopted the general rule that plaintiffs receive the privilege of deference to their choice of forum. Leung, 354 Md. at 224, 729 A.2d at 960. The Rules Committee explicitly commented on the right of plaintiffs to choose the venue for their suit as well as the deference owed to that choice by trial courts. Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) (“[D]ue consideration must be given to the plaintiffs selection of forum, and this selection will not be altered solely because it is more convenient for the moving party to be in another forum.”). Piper Aircraft, a landmark decision in federal law on 28 U.S.C. § 1404(a), stated the proposition that “ordinarily a strong presumption in favor of the plaintiffs choice of forum” exists. 454 U.S. at 255, 102 S.Ct. at 265-66, 70 L.Ed.2d at 435; Leung, 354 Md. at 224, 729 A.2d at 959-60. Piper Aircraft explained that “[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiffs choice deserves less deference.”[7] 454 U.S. at 255-56, 102 S.Ct. at 266, 70 L.Ed.2d at 436; Sinochem Int’l Co. v. Malay. Int’l Shipping Corp., 549 U.S. 422, 430, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15, 25 (2007). B. The plaintiff’s choice of venue is not an absolute peivi-LEGE. Although the plaintiffs chosen venue is the presumed convenient forum for the plaintiff, and, as such, is granted deference, that deference is by no means guaranteed as an absolute. Leung, 354 Md. at 225, 729 A.2d at 960 (“The plaintiffs choice, however, is not an absolute and uncontrolled privilege that is determinative under present forum non con-veniens law.”); Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) (“Plaintiffs choice of forum, then, is not the final word.”). Not only is the privilege not absolute, but the deference owed to the plaintiff may face significant diminishment to the point of non-existence, depending on the circumstance. Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2nd Cir. 2001) (“[T]he degree of deference to be given to a plaintiffs choice of forum moves on a sliding scale .... ”). Our case law interpreting Rule 2-327(c) has acknowledged the significance of the plaintiffs residence when that residence is not the same place as the chosen forum. Leung first explicitly incorporated the federal rule that a “ ‘plaintiffs choice of venue ... has minimal value ... where the plaintiff is not a resident of the judicial district in which he [or she] has instituted suit.’ ” Id. at 228, 729 A.2d at 962 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981)). In Leung, we noted that the fact that the plaintiff failed to reside in the forum in which suit was brought “los[t] its force [because] not only were the plaintiffs not residents of the venue of their choice, but the defendants’ choice of venue was not the venue in which they resided. Nor is the plaintiff a resident of the venue sought by the defendants ....”[8] Id. at 229, 729 A.2d at 962. As we explained there, the deference owed to the plaintiff was not meant to be fixed but varied depending on the facts before the trial court. Id. Prior to Leung, we had implicitly acknowledged this principle of diminished deference when interpreting Rule 2-327(c). For example, in Odenton, we affirmed the trial court’s transfer of the case to Anne Arundel County, where the plaintiff resided. 320 Md. at 41, 575 A.2d 1235-39. Similarly, in Urquhart, without expressly recognizing the principle of diminished deference, we affirmed the trial court’s exercise of its discretion in considering that the plaintiffs did not live in the venue where they filed suit. 339 Md. at 18-19, 660 A.2d at 420-21. Furthermore, in that case, we commented that the only contact the plaintiffs had with the chosen forum was that the subject of the suit, Mr. Simmons, had died at a hospital in that venue. 339 Md. at 18-19, 660 A.2d at 420-21. In Stidham, the Court of Special Appeals cited to Leung as standing for the proposition that the trial court accords the plaintiffs choice of forum less deference when the plaintiff does not reside in that forum. 161 Md.App. at 669, 870 A.2d at 1289. According to the intermediate appellate court in Stidham, not only did the trial court properly transfer the case, the trial court properly weighed the plaintiffs choice of venue in light of the fact that the plaintiff did not reside in that forum and additionally, that the plaintiff resided in the forum in which the defendants sought transfer. Id. at 669, 870 A.2d at 1290. In Thompson v. State Farm Mut. Auto Ins. Co., the Court of Special Appeals affirmed the trial court’s transfer of forum, and held that the trial court properly “discounted” the deference owed to the plaintiffs choice “by the fact that she does not live there.” 196 Md.App. 235, 264, 9 A.3d 112, 122 (2010). In addition to the plaintiffs residence as a factor to lessen the deference given to the plaintiffs choice of venue, the Stidham court applied the “meaningful ties” factor to further lessen the deference afforded to the plaintiffs choice of forum. In Stidham, the defendants struck the plaintiffs car in Baltimore County, the residence of the plaintiff. 161 Md.App. at 565-66, 870 A.2d at 1287-88. The plaintiff brought his action in Prince George’s County, an undisputed appropriate venue in light of the fact that the defendants lived in Pennsylvania. Id. at 569, 870 A.2d at 1290. The Stidham court held that because meaningful ties to the controversy connected the action to Baltimore County as the situs of the accident, the meaningful ties consideration militated in favor of transferring the action to Baltimore County instead of retaining the action in Prince George’s County. Id. The Stidham court gave no sequential importance to evaluating whether the plaintiff lived in the forum in which the plaintiff sued or whether meaningful ties existed between the controversy and the chosen forum. Id. (“We therefore conclude that, because appellant is a resident of the transferee jurisdiction, Baltimore County, his choice of Prince George’s County, which ‘has no meaningful ties to the controversy and no particular interest in the parties or subject matter,’ is entitled to little deference and thus little weight when the factors for and against transfer are weighed.”). We note that, when correctly applied, “meaningful ties” is a factor, like the plaintiffs residence in the chosen forum, which can minimize the deference afforded to the plaintiffs choice of forum. Appellate courts in this state have reversed the trial court’s decision to transfer the case to another forum in three relevant but factually different cases from the case at bar, Leung, Nodeen, and Scott. First, Leung involved a motor vehicle tort action in which neither the three plaintiffs nor the five defendants lived in Maryland. 354 Md. at 220, 729 A.2d at 957. The Leungs filed suit in Baltimore City, and one defendant filed a motion to transfer venue to Howard County. Id. The defendant supported her motion by attaching a copy of the motor vehicle accident report issued by a Maryland State Trooper, which indicated that the accident had occurred in Howard County. Id. at 220-21, 729 A.2d at 958. The trial court granted the motion to transfer without affording the parties a hearing. Id. at 221, 729 A.2d at 958. Upon review, we surmised that the only factor weighing in favor of transfer was the situs of the accident, Howard County, and therefore, the location where the accident occurred alone was not a strong basis for transferring the case. Id. at 224, 729 A.2d at 959. We reversed, concluding that the Circuit Court abused its discretion by granting the transfer, because “at best, the balancing factors produce[d] an equipoise, so that the plaintiffs’ choice of forum controls.” Id. at 229, 729 A.2d at 962. Notably, the present case before us is different from Leung because the defendants in Leung sought to transfer to a venue where neither the plaintiff nor the defendant resided. Here, unlike the case of Leung, the defendants sought to transfer the case to a venue where the plaintiffs reside. In Nodeen, we reviewed a Circuit Court’s order, which also granted the transfer without a hearing. 408 Md. at 174, 968 A.2d at 1079. Nodeen involved a motion to modify a custody order pending in the plaintiffs choice of forum, a different forum than where the custody order originated. Id. at 174, 968 A.2d at 1082-83. The defendants did not live in Maryland, and we determined that the Court of Special Appeals failed to properly analyze that either of two venues was appropriate, which is the critical step before analyzing the application of Rule 2-327(c). Id. at 179-80, 968 A.2d at 1082-83. There, we held that no reasonable trial judge could have set aside the deference owed to the plaintiffs choice of forum in light of the particular facts of the case, including that the plaintiff resided in the forum selected for suit. Id. at 181, 968 A.2d at 1083-84. Without the benefit of the trial court’s rationale for transfer, we reasoned that the evidence presented did not support the conclusion to transfer the case from Calvert County to Anne Arundel County. Unlike in Nodeen, the hearing judge here provided a basis for the conclusion that the balancing of convenience and justice weighed strongly in favor of transfer. Respondents rely upon the decision of the Court of Special Appeals in Scott v. Hawit, 211 Md.App. 620, 66 A.3d 60, to argue that the intermediate appellate court properly reversed the trial court in the present case. Scott involved a medical malpractice claim in which the plaintiffs alleged that a doctor in Calvert County, Dr. Raja I. Hawit, and a medical institution in Baltimore City, Johns Hopkins Hospital, were separately negligent in acts or omissions with regard to the post-delivery care rendered to the plaintiffs son. Id. at 623, 66 A.3d 60. Ms. Scott filed suit in Baltimore City, and, upon defendants’ motion, the Circuit Court transferred the case to Calvert County. Id. at 623-26, 66 A.3d at 62-64. When assessing the convenience of the parties in Scott, the Court of Special Appeals noted the atypical nature of the case insofar as the plaintiff alleged negligence “on the part of two defendants, who are independent of each other, based on their separate, allegedly negligent conduct, taking place at different times but causing a single harm.” Id. at 630, 66 A.3d at 66. The Court of Special Appeals reversed the trial court’s grant of the motion to transfer to Calvert County, holding that the trial court improperly focused on irrelevant factors, such as the situs where the child’s injuries originated as opposed to the location of the tortious conduct, the perceived apportionment of liability between the defendants, and for treating Johns Hopkins as a resident of Calvert County and not Baltimore City. Id. at 634, 66 A.3d at 69-71. Unlike in Scott, the hearing judge in the case at bar did not abuse his discretion by considering irrelevant factors. C. The deference owed to the plaintiff’s choice of forum IS CALIBRATED IN THE BURDEN OF PERSUASION. When the trial court assesses whether to transfer a case pursuant to Rule 2-327(c), the court may only transfer the case if the moving party demonstrates that the balance of the convenience along with the interests of justice weighs strongly in favor of transfer. Odenton, 320 Md. at 40, 576 A.2d at 1238 (citing Akers v. Norfolk and Western Railway Company, 378 F.2d 78, 80 (4th Cir. 1967)); Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) (“The burden is on the moving party to show that justice is best served by the transfer, and a transfer should occur only when the balance weighs strongly in favor of the moving party.”). In both Urquhart and Leung, we explained that we adopted that particular language—that the balance weighs strongly in favor of transfer—in order to afford the appropriate deference to the plaintiffs desired forum. Leung, 354 Md. at 224, 729 A.2d at 959 (“Proper regard for the plaintiffs choice of forum is the reason why ‘a motion to transfer from the forum chosen by the plaintiff should be granted only when the balance weighs strongly in favor of the moving party.’ ”) (citing Urquhart v. Simmons, 339 Md. 1, 18, 660 A.2d 412, 420 n.7 (1995)). The burden falls on the moving party to demonstrate that the balance strongly points toward transfer.[9] Id. When balancing the factors amounts to equipoise, or a tie, then the plaintiffs choice of forum should remain undisturbed. Leung, 854 Md. at 229, 729 A.2d at 962; Nodeen v. Sigurdsson, 408 Md. 167, 181, 968 A.2d 1075, 1088 (2009); see also Smith v. Johns Hopkins Cmty. Physicians, Inc., 209 Md.App. 406, 413, 59 A.3d 1070, 1074 (2013) (“[T]he proponent of the transfer of venue, bearing the burden of proof, thereby loses the evidentiary tie.”). Given the fact-laden nature of this balancing test, trial court decisions are necessarily “individualized” and made on a “case-by-case” basis. Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22, 31 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945, 953 (1964)). As we stated in Leung, “The discretionary decision by a trial court on whether to transfer an action, and appellate review of that exercise of discretion, are predominantly fact driven. Very few generalizations can be made in this area of the law.” 354 Md. at 226, 729 A.2d at 961. We recognize that because trial courts have discretion to weigh the facts of each case, “uniformity and predictability of outcome” are “almost impossible.” American Dredging Co., 510 U.S. at 455, 114 S.Ct. at 989, 127 L.Ed.2d at 298. We cannot, therefore, generalize Rule 2-327(c) transfer cases because one case’s facts do not fit neatly into the next. Given the fact-intensive nature of Rule 2-327(c) transfer inquiries, appellate courts are limited in their review to the facts before them. Thus, appellate courts understandably confront a puzzle when reviewing transfer cases. On the one hand, an appellate court must give wide latitude to a trial court’s evaluation and, thus, to the balance of the various factors it considered prior to making a final determination about whether to transfer the case. On the other hand, appellate review calls for a reviewing court to determine if the trial court abused its discretion when balancing convenience and the interests of justice. The appellate court must do so without imposing on the province of the trial court. As a result, appellate courts must resolve the tension between their own standard of review and the moving party’s burden of persuasion at the trial level. Judge Charles E. Moylan, Jr., in Payton-Henderson v. Evans, observed this tension, and emphasized that the burden of persuasion “being a heavy one is a guideline for the trial judge and not a standard of appellate review.” 180 Md.App. 267, 287, 949 A.2d 664, 665. Appellate courts would do well to remember that just because they “may not have chosen to transfer” the case does not mean that the trial court abused its discretion in doing so, assuming the trial court had sufficient facts to support its order to transfer. Urquhart, 389 Md. at 19, 660 A.2d at 421 (holding that, although the Court may not have chosen to transfer the case from Prince George’s County to Montgomery County, the trial court was within its discretion to do so). The trial court must have acted unreasonably based on the facts before it for an appellate court to reverse under an abuse of discretion standard. North v. North, 102 Md.App. 1, 14, 648 A.2d 1025, 1032 (1994) (“The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.”). Appellate courts must, therefore, judiciously approach reviews of Rule 2-327(c) transfers so as not to foist onto themselves the task designed for, and better left to, the trial courts. D. The Circuit Court did not abuse its discretion in finding THAT THE BALANCE OF THE CONVENIENCE OF THE PARTIES AND WITNESSES AND INTERESTS OF JUSTICE WEIGHED IN FAVOR OF TRANSFER. Even though the few decisions in Maryland interpreting Rule 2-327(c) seemingly turn on the residence of the plaintiff, this Court has relied upon a number of factors that hearing judges should consider when determining the convenience of the parties. Plaintiffs received due deference from their choice of venue when they reside in the forum. Odenton, 320 Md. at 41, 575 A.2d at 1238-39; Urquhart, 339 Md. 1, 19, 660 A.2d 412, 421; Leung, 354 Md. at 228, 729 A.2d at 959-60; Nodeen, 408 Md. at 180-81, 968 A.2d 1075, 1083-84. Defendants received due deference from their proposed choice of venue when defendants resided in that forum. Urquhart, 339 Md. at 18-19, 660 A.2d at 420; Leung, 354 Md. at 228-29, 729 A.2d at 962; Nodeen, 408 Md. 167, 181, 968 A.2d 1075, 1083. A trial court properly considered the location where the cause of action arose as a factor. Odenton, 320 Md. at 41, 575 A.2d at 1238-39; Urquhart, 339 Md. at 18-19, 660 A.2d at 420-21. We have assessed the relative convenience of haling defendants or plaintiffs into the others’ choice of venue based on residence or where they carry on business. Odenton, 320 Md. at 41, 575 A.2d at 1238-39; Urquhart, 339 Md. at 19, 660 A.2d at 420-21; Leung, 354 Md. at 228-29, 729 A.2d at 962; Nodeen, 408 Md. at 181, 968 A.2d at 1083. We commented on the convenience of the witnesses as a factor for the trial court to consider. Odenton, 320 Md. at 41, 575 A.2d at 1238-39; Leung, 354 Md. at 228, 729 A.2d at 962; Nodeen, 408 Md. at 181, 968 A.2d at 1083. Lastly, we have considered the case of access to sources of proof. Nodeen, 408 Md. at 181, 968 A.2d at 1083. We have previously commented about these factors and, although not intended as an exhaustive or exclusive list of concerns for trial judges, these factors operate as a guide for judges when they engage in a convenience analysis. Trial judges have the discretion to weigh the factors as they deem appropriate in light of the circumstances of the cases before them. Thus, we review the facts of the case before us. We determine that the hearing judge gave some weight to the plaintiffs’ venue choice by properly recognizing the moving party’s burden of persuasion. The hearing judge stated that this was a “motion under the forum non conveniens analysis” and that it had to determine “whether the factors balance heavily in favor of transfer to the suggested jurisdiction of Talbot County.” Next, when considering the convenience factor, the hearing judge looked at the convenience of all parties[10]—in this case ten parties, the three plaintiffs and seven defendants—and correctly found that the majority of the parties would be convenienced by the transfer. The hearing court accurately determined that “seven of the ten named parties in the case, plaintiff and defendants, are in Talbot County.” The hearing judge noted that he “was struck by the fact ... that [the] plaintiffs actually must pass the Circuit Court for Talbot County on the way to the Circuit Court for Baltimore City.” At the end of the hearing judge’s order to transfer, he reasoned that “[I] see many motions to transfer, noting that [the] plaintiff is afforded deference with respect to choice of venue. And in many cases ... the factors would not weigh strongly .... But in this case, I see this as, far and away, one of the strongest in terms of weighing in favor of transfer to Talbot County.” Accordingly, it is not our place as the reviewing court to second-guess the weighing of the evidence by the Circuit Court.[11] See Smith, 209 Md.App. at 415, 59 A.3d at 1074; Payton-Henderson, 180 Md.App. at 287, 949 A.2d at 665. We disagree with the Court of Special Appeals’ reasoning when the Court of Special Appeals conflated the deference owed to the Kerrigans with the balancing of the convenience of the parties. The intermediate appellate court concluded that the residency of the Kerrigans should not have factored into the overall convenience analysis if the hearing judge gave the Kerrigans due deference to their choice of venue. The Court of Special Appeals erred when it set aside consideration of the plaintiffs’ convenience (or inconvenience). Without providing any legal support, the intermediate appellate court calculated only the convenience to the seven defendants by weighing four defendants from Talbot County and three defendants from Baltimore City rather than all ten parties, which would have included the plaintiffs. Rule 2-327(c) analysis calls for trial judges to weigh the convenience of the parties. Moreover, we have previously adopted deference to the plaintiffs choice of venue as an additional factor to weigh, separate from the convenience of the parties, in the overall balancing. See Urquhart, 339 Md. at 18, 660 A.2d at 420 n.7 (“We note that the Court of Special Appeals adopted from federal case law the additional factor of ‘proper regard for the plaintiffs choice of forum see also Stidham, 161 Md.App. at 571, 870 A.2d at 1291 (weighing the geographical convenience of both the plaintiff and the defendants); cf. Scott, 211 Md.App. at 636-37, 66 A.3d at 70-71 (explaining that despite the plaintiff receiving deference, the plaintiffs residence is still considered in the convenience analysis); cf. Sousa v. TD Banknorth Ins. Agency, Inc., 429 F.Supp.2d 454, 457 (D.N.H. 2006) (acknowledging that although the plaintiff receives deference for filing suit in his or her home forum, the geographical convenience of the plaintiff is still balanced against the geographical convenience of the defendant). When weighing the convenience of the witnesses, the hearing judge admitted that “it’s hard to say who will actually testify,” but he acknowledged that he had considered a list of over five hundred potential witnesses offered by the Kerri-gans. The hearing judge then determined that the “primary and key witnesses” who would be inconvenienced were located in Talbot County. Additionally, the hearing judge weighed the relative convenience of the doctors on the transplant team that had treated Brandon, all of whom worked in Baltimore City, against the convenience of Brandon’s coaches and teammates who lived in Talbot County. We cannot say that the hearing judge’s finding that “the significant balance is in favor of those who would be inconvenienced significantly coming from Talbot County to Baltimore City” was unreasonable. The Kerrigans split hairs over the words used by the hearing judge in his convenience weighing. The Kerrigans argue that the judge placed no weight on the transplant team in considering the convenience of the witnesses. Even a cursory review of the record suggests otherwise. The hearing judge, in fact, stated: “I was unpersuaded by the exhibit and statistics presented by plaintiffs’ counsel as to the witnesses. I don’t find the fact that the transplant team is in Baltimore City is of significance.” That the judge found the argument advanced by the Kerrigans regarding the transplant team less compelling than the argument advanced by the University of Maryland regarding the teammates and coaches of Brandon was not unreasonable.[12] When a trial court considers the interests of justice, the court accounts for overall “systemic integrity and fairness” in transferring or retaining the case by assessing the public and private interests. Odenton, 320 Md. at 40, 575 A.2d at 1238; Johnson, 314 Md. at 526, 552 A.2d at 31. The private interests are not at issue in the case sub judice as the hearing judge held those factors did not tip toward one side or the other. The factors to which hearing judges look to determine the public interest include court congestion, the jury duty burden, and keeping localized concerns decided in their place of origin. Johnson, 314 Md. at 526, 552 A.2d at 31. Yet, these factors are not intended to be an exhaustive list. Id. The hearing judge reasonably found that the public interest of justice weighed in favor of transfer. Based on the record of the motion hearing, we have insufficient facts to determine which side correctly determined the caseload and relative congestion. The Kerrigans claim that no data was submitted to the hearing judge to make the determination that the jury burden weighed in favor of transfer. We disagree based on the hearing judge’s reference to and use of the “Maryland Judiciary Annual Statistical Abstract for Fiscal Year 2014,” which was included as an exhibit in both parties’ filings and referenced on the record by both sides during the hearing. The hearing judge determined that the burden was heavier in Baltimore City as compared to Talbot County based on the number of trials recorded as having taken place and the numbers submitted in the Statistical Abstract. Lastly, as the public interest is an overarching concept regarding systemic integrity and fairness, we determine that the hearing judge acted reasonably in considering the public’s interest in the health care provided to its communities. When considering the facts before him, the hearing judge found the arguments advanced by the University of Maryland and the other defendants more persuasive. We cannot say that the hearing judge abused his discretion in finding that both the convenience of the parties and witnesses as well as the interests of justice weighed strongly in favor of transfer.[13] V. Upon our review of the Circuit Court’s order to transfer the Kerrigan’s case from Baltimore City to Talbot County, we determine that the hearing judge did not abuse his discretion in balancing the convenience of the parties and interests of justice and finding that the weight of the evidence strongly favored transfer. We recognize that less weight is given to the plaintiffs choice of venue when the plaintiff does not reside in that forum, and that choice, likewise, is given minimal weight when the forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter. The facts of each case will dictate whether the plaintiffs choice of venue will control the choice of forum. The intermediate appellate court erred in reversing the hearing judge’s order to transfer the case to Talbot County. JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT TO BE PAID BY RESPONDENTS. Barbera, C.J., Adkins and McDonald, JJ., dissent. .The Petitioner presented the following questions to this Court: 1. Whether the Court of Special Appeals substituted its judgment and failed to defer to the wide discretion owed to the lower court’s reasons in support of transfer? 2. Whether the Court of Special Appeals failed to review this case on its individual merits by placing too much reliance upon Scott v. Hawit, 211 Md.App. 620, 66 A.3d 60, cert. denied, 434 Md. 314, 75 A.3d 319 (2013), a decision with much different facts and erroneous trial rulings that did not occur in this case? 3. Whether the Court of Special Appeals erred by holding that the residence of foreign plaintiffs should not factor into the convenience of the parties’ analysis under Rule 2-327(c)? . The amicus brief submitted by the Maryland Association for Justice suggests that the standard of review differs from how we have stated it here. The brief beckons this Court to ignore the words in its previous decisions and to read into the various decisions a raised level of review where the trial court receives less deference than what is afforded to it under an abuse of discretion standard. Never has this Court held that any other standard of review applies to Rule 2-327(c) motions to transfer. We see no good reason now to change the rule. . Rule 2-327(c) differs from the federal rule in the plain language insofar as the Md. Rule includes "On motion of any party ...The language of the two rules are otherwise "virtually identical.” Urquhart, 339 Md. at 11, 660 A.2d at 417. The meaning of this variation in language was litigated in Urquhart, in which we determined that "on motion of any party” precludes the trial court from, sua sponte, transferring the case pursuant to Rule 2-327(c) and requires the parties to raise the issue in a motion to transfer (unlike federal trial courts which may decide, sua sponte, to transfer a case based on convenience). Id. at 11-12, 660 A.2d at 417. . That venue is appropriate in more than one Maryland trial court is a prerequisite to pleading for transfer under Rule 2-327(c), See, e.g., Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) ("The transferee court must be a court where the action could have been properly filed in the first instance,”). . See, e.g., Md. Code Ann., Cts. & Jud. Proc., §§ 6-201-203 (1973, 2013 Repl. Vol.). . Stidham was not the first case in which Maryland appellate courts have used the “meaningful ties” analysis. In Urquhart, for example, we suggested that when "the only contact that Prince George’s County had to the instant case was that Mr. Simmons died at ... [a] [h]ospital ... located in Prince George's County and [a defendant] had an office located in Prince George’s County," the plaintiff's choice of venue had no meaningful ties to the controversy and no particular interest to the parties or subject matter. 339 Md. at 18-19, 660 A.2d at 420-21 (1995). In context, the hearing judge in the case at bar considered that the controversy contained meaningful ties to health institutions in both Talbot County and Baltimore City, and therefore did not alter the deference owed to the Kerrigans' choice of forum on that basis. See Pacific Car, 403 F.2d at 954 ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff’s choice is entitled only to minimal consideration.”). . The Dissenting Opinion mischaracterizes our reference to Piper Aircraft as a reliance on that case. This Court has repeatedly and consistently referred to Piper Aircraft for its general exposition of the law, not its facts. Here, we only cite to Piper Aircraft to show the history and development of the principles of our law over time. . The Dissenting Opinion relegates the section of Leung where we assessed the residence of the plaintiffs and defendants to ''dicta.” In doing so, the Dissenting Opinion abbreviates the Court's analysis to exclude how the convenience of the parties did not militate in favor of transfer, a necessary determination for the Court to make based on the legal standard set forth in Rule 2-327(c). . That the moving party is most typically the defendant(s) does not preclude a plaintiff from seeking transfer under Rule 2-327(c). See Paul V. Niemeyer, Linda M. Schuett, and Joyce E. Smithey, Maryland Rules Commentary 303 (4th ed. 2014) (“Under section (c) of this rule, any party to an action may file a motion to transfer the action to another court having venue for the convenience of the parties and the witnesses.”). . The Dissenting Opinion weighs the convenience of the parties without consideration of the plaintiffs in the convenience analysis. We have not previously weighed the convenience of the parties using tire method the Dissenting Opinion suggests, nor have we previously considered the factors the dissent prioritizes as legally significant. The Dissenting Opinion’s reference to a footnote in Urquhart is simply a discussion of the burden of persuasion, not an explanation of how to conduct a convenience analysis, . The Dissenting Opinion argues that the Kerrigans have a "significant connection” to Baltimore City and that the Kerrigans "made dozens of trips into Baltimore City,” findings not made by tire hearing judge. Additionally, the Dissenting Opinion characterizes these connections as "far more tangible” than connections in Odenton or Urquhart, a distinction without a difference given that how tangible a connection is has never before been recognized by this Court as legally relevant. . An additional argument raised by the Kerrigans is that the hearing judge allowed the defendants who work in Baltimore City to waive their inconvenience. This assertion is baseless, given the judge’s findings that seven out of ten of the named parties lived in Talbot County. Had the judge allowed the members of the transplant team to waive their inconvenience, as the Kerrigans suggest, then the judge would have concluded that the seven remaining named parties resided in Talbot County. . The Dissenting Opinion repeatedly emphasizes that the balance does not weigh strongly in favor of transfer, yet concedes that both the public interest and convenience of the parties and witnesses weigh in favor of transfer. The Dissenting Opinion muddles the burden of persuasion, that the evidence weighs strongly in favor of transfer, with the standard of review, abuse of discretion, and in so doing, chooses to substitute its judgment for that of the hearing judge and engages in precisely the process we have cautioned against. By applying a de novo standard of review to the hearing judge’s decision, the Dissenting Opinion sidesteps the abuse of discretion standard in order to reach its preferred outcome for the case. The endpoint of the Dissenting Opinion’s rationale makes the Rule 2-327(c) burden of persuasion an insurmountable hurdle for the moving party, and if adopted, would reverse decades of jurisprudence by this Court and the Court of Special Appeals.